## NORTHERN RAILROAD COMPANY *vs.* FITCHBURG RAILROAD COMPANY.

A carrier who acts as the forwarding agent of the owner of goods in giving directions by way-bills or otherwise to the successive lines of transportation over which they are to be carried, beyond the termination of his own route, is responsible as such forwarding agent only for the want of reasonable diligence and care.

A way-bill of iron rails, to be transported over several successive lines of transportation by railroad, made out by the agents of the first line in this form: " Way-bill of merchandise transported by the F. R. R. from C. to B. Nov. 27, 1852. (Consignees) Ogdensburgh R. R. (Description of articles) Rails, part lot," is sufficient to show to the intermediate carriers that the rails are to be carried and delivered to the Ogdensburgh Railroad at B., and to exonerate the first carrier from liability, although the rails are detained and used by one of the intermediate railroad companies, which at the same time is receiving other similar rails over the same route for its own use.

CONTRACT against a railroad company for a failure to forward and deliver to the plaintiffs at Burlington certain iron rails. The declaration contained several counts, which it is unnecessary to set forth at length.

The case was heard in this court, without a jury, before *Hoar*, J., who reported it for the opinion of the whole court upon the following facts, which were established by the evidence :

" The iron, for the loss of which the suit was brought, was part of a lot delivered to the defendants at Charlestown in 1852, to be carried over their railroad, and forwarded by connecting roads to Burlington, Vermont. It was safely carried over the defendants' road, and delivered by them to the Cheshire Railroad, the next road in the line of forwarding; and by that road delivered to the Rutland and Burlington Railroad, and upon that road was detained and used. .

" The freight for the carriage of the iron, at the usual prices, was paid by the plaintiffs to the Rutland and Burlington Railroad Company for all the connecting roads ; and the defendants received their proportion of it, without notice of any claim for failure to deliver any part of the iron. The Rutland and Burlington Railroad Company had agreed with the plaintiffs to have the whole lot transported from Charlestown to Burlington for an entire sum, less than the usual and established rates. There was some evidence that this contract was made by the defendants ; but, upon the whole evidence, I was of the opinion that it was not made by them, but by the Rutland and

Burlington Railroad Company; and that the defendants had no notice of any special contract until after the freight had been charged at the usual rate, the iron all carried over the defendants' road, and the freight paid by the plaintiffs, and the defendants had received their customary proportion of it.

"Notice was given by the plaintiffs to the Rutland and Burlington Railroad within a few weeks after the lost iron was missing, and a claim made by the plaintiffs upon that road for compensation for it; and, soon after, the defendants were notified that it was lost: but no claim was made upon the defendants, nor suggestion that they were in fault or responsible for its loss, until within a year of the time when this action was brought, which was nearly six years afterward.

"The Rutland and Burlington Railroad Company were solvent; and a demand against them could have been collected, by due diligence, at any time within a year after the loss of the iron. They then became insolvent, and have so continued ever since. In the negotiations between them and the plaintiffs during that year they did not deny their liability, if it could be shown that the iron was received by them, and not delivered.

"The occasion of the loss of the iron arose from the manner in which the way-bills were made out by the Fitchburg Railroad Company. Some of them did not designate the number of cars loaded with iron for the plaintiffs; and one of them did not, in any way, designate the amount of the iron transported. This was negligent and improper. The defendants were at the same time forwarding other iron to the Rutland and Burlington Railroad Company, to be used on that road; and hence th mistake arose. The way-bills,* and a letter of George Parker,.

---

* One of the way-bills is subjoined. The name of the Ogdensburgh Railroad Company was afterwards changed to the Northern Railroad Company.

"Way-Bill of Merchandise transported by Fitchburg Railroad Co., from Charlestown to Burlington, Nov. 27, 1852. ............, Conductor.

| Consignees. | Description of Articles. | Weight. | Rate. | Amount. | Forwdng. Exp. | Remarks. |
|---|---|---|---|---|---|---|
| B. & C. | 32 Boxes | 2140 | 700 | 7.49 | 4.01 | 222 |
| H. & C. | 10 Boxes | 530 | | 1.85 | 1.17 | |
| Ogdensburgh R. R. | Rails | Part Lot | | | | |
| | | 2670 | | 9.34 | 5.18 | |

Expenses, 5.18."

dated Oct. 2, 1857, to John J. Swift, may be referred to. There was no other negligence or breach of contract by the defend-, ants, except as to the way-bills.

" If upon these facts the plaintiffs are entitled to recover the whole value of the iron, I find for the plaintiffs the sum of $3,592.15 ; being at the rate of sixty dollars a ton for the quantity sued for, and including interest from the first day of April 1853. If not entitled to recover for the whole value of the iron, but for such damages as would have been sustained if the plaintiffs had made a seasonable demand upon the defendants, without laches or unreasonable delay, I find for the plaintiffs, for the sum of two hundred dollars; and, if not entitled to recover on either ground, for the defendants."

The letter of George Parker, which is referred to, contained a statement of the claim of the plaintiffs upon the defendants.

*P. W. Chandler & G. O. Shattuck,* for the plaintiffs. It was the duty of the defendants to carry the rails over their own road, and to forward them by connecting roads to Burlington. Gen. Sts. *c.* 63, § 114. They were at the same time forwarding other iron of the same quality to the Rutland and Burlington Railroad Company. The way-bill dated November 27, 1852, does not designate the amount of iron and calls for only one car; but in fact it appeared in evidence, though it is not stated in the report, that eight cars were sent from Charlestown under it. As the Rutland and Burlington Company were receiving lots of the same kind of iron at the same time, they naturally sent forward to Burlington only the one car load which was called for by the way-bill. The contract with the Rutland and Burlington Company to carry the iron for an entire sum cannot affect the claim on the defendants. *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. (U. S.) 344. *Wing* v. *New York & Erie Railroad,* 1 Hilton, (N. Y.) 235, 242. *Green* v. *Clarke,* 2 Kernan, 343. The defendants are liable for the whole loss, because it was caused by their improper directions. On the facts as found, the defendants, by their negligent and improper conduct, authorized the Rutland and Burlington Company to retain and use the plaintiffs' property. Had any negligent act

of that company intervened, the case might have been different But that company probably had no ordinary means of distin guishing their iron from that of the plaintiffs, except by the way-bills. The liability of the defendants is the same as if they had wilfully misdirected the property, or described it in the way-bill as the property of the Rutland and Burlington Company. *Freeman* v. *Cooke*, 2 Exch. 654. See also *Barnardiston* v. *Chapman*, cited in 4 East, 121; *Knights* v. *Coates*, 1 Irish L. 53; *Colepepper* v. *Good*, 5 C. & P. 380; *Hamilton* v. *Hunt*, 14 Illinois, 472; *Guille* v. *Swan*, 19 Johns. 381. The defendants contributed directly to a loss which was caused by an act done under the direction of their way-bill. All who contribute materially to the proximate cause of a loss are liable for it.

*J. G. Abbott & H. C. Hutchins*, for the defendants.

MERRICK, J. The iron rails, to recover damages for the loss of which this action is pursued, were a part of a lot delivered in 1852 by the plaintiffs, then called the Ogdensburgh Railroad Company, to the defendants at their freight depot in Charlestown to be carried over their road and thence forwarded over connecting roads to the plaintiffs at Burlington, Vermont. The rails were all seasonably transported over their road, and at its termination were delivered by them, with accompanying way-bills, to the Cheshire Railroad Company, whose road was the next in course in the line of forwarding, and were by them delivered, with the same way-bills, to the Rutland and Burlington Railroad Company. A large number of the rails which were thus received by the last named company were never delivered to the plaintiffs or carried to Burlington, but were detained and converted to their own use by them in completing the construction of their own road; erroneously supposing them, it is said, to be their own, as several lots of similar rails of theirs were about that time forwarded to them by the defendants. The Rutland and Burlington Company are undoubtedly liable to the owners for the value of the rails; but as that company has since become utterly insolvent, and any remedy against them would be worthless, because no judgment against them could be effectually enforced, the plaintiffs seek to make the defend-

ants responsible for the value of the rails taken and used by that company.

It is alleged by the plaintiffs that the said error and the consequent loss to them by the misappropriation and unlawful use of the rails in question was occasioned by the defendants, by the careless, negligent and improper manner in which the way-bills were made and prepared by them; that they were in fact prepared and expressed in such terms as to be very likely, even if not certain, to induce the agents and servants of the Rutland and Burlington Company to believe or suppose that the rails mentioned in them were sent and belonged to that company.

There is upon the facts stated in the report no doubt that the defendants, in accepting the rails and undertaking to cause them to be transferred over their own and each successive railroad on the line from Charlestown to Burlington, acted as and assumed the responsibilities of forwarding merchants or agents, as well as of common carriers. In their former capacity they were bound to exercise reasonable diligence and care; and this required that they should furnish and supply, for the use and guidance of the several successive carriers to whom in the due course of transportation the rails should come, way-bills, or other suitable papers containing the needful and accurate information and directions as to the destination, and the disposition to be made, of them. No particular form is essential for that purpose, but the directions should be so expressed as to be free from any real ambiguity, and to be intelligible to persons of ordinary capacity, conversant with that kind of business, who should examine and consider them with proper attention. Any omission of such requisite care would constitute culpable negligence, and would make the party chargeable with it liable in damages for all loss and injury which should result from or be the consequence of it. Story on Bailm. §§ 502, 537. *Briggs* v. *Boston & Lowell Railroad Co. ante,* 246.

A copy of one of the way-bills which were forwarded with the rails by the defendants and duly received by the Rutland and Burlington Company is annexed to the report and makes part of the case. The others are understood to be made in the same

manner.   Upon examination of the one before us it is obvious that it is in several particulars less explicit and exact than it might have been.   But it does, in substance, contain all the information which is material or essential to enable each successive carrier to understand his duty, and the service which he is expected and required to perform.   The articles to be carried, the route over and the place to which they are to be transported, and the consignee to whom they are to be delivered, are all plainly and accurately described.   There is nothing equivocal or ambiguous in any of the expressions contained in it.   The goods to be carried were described as a part of a lot of rails ; the route is from Charlestown to Burlington ; and the Ogdensburgh Railroad is named and mentioned as the consignee.   All this is plain, and must have been intelligible to any person having the least familiarity or acquaintance with the kind of business to which it referred.   There is certainly nothing upon the face of the paper which has the least tendency to show that any part or number of the rails were sent to or owned by the Rutland or Burlington Company ; and we are unable to see how any officer or agent of that company could deduce such a conclusion from it, or act upon any such supposition, without carelessness and gross inattention to the contents of the way-bill.

We are therefore of opinion that the plaintiffs have failed to establish their allegation that the way-bills were made by the defendants in a negligent and improper manner, or that they gave any improper directions to the Rutland and Burlington Company, or that the misappropriation and loss of the rails is attributable to any carelessness or neglect of duty on their part. The defendants are therefore entitled to judgment.